My name is John Selpuk. I represent the appellant. My argument this morning is approximately eight to nine minutes and I will reserve the remainder to address Mr. Moore's points. Your Honor, on the ground floor of the resort that's at issue in this case there are certain commercial apartments such as a beach bar, fitness center, members lounge to name a few. The members lounge is also known as the business apartment or CA2. Ko Olina Development or KOD purchased CA2 in December of 2010 and has owned it ever since. For three years prior to the time it purchased, KOD had an option to purchase CA2. When KOD obtained its options there were interests that were associated with or pertinent to CA2. Those associated or pertinent interests included among other things the right to exclusive use of swimming pools, pathways, and other areas. The trial court found as a matter of law that the interests that were associated with or pertinent to CA2 when KOD obtained its option were not required to be The trial court made that determination as a matter of law because it found that the interests pertinent to CA2 were revocable licenses and not easements. It is our position in this appeal that the trial court's ruling in that regard was incorrect. Because the ruling was a matter of law, this court's standard is de novo. As a first step in reaching its decision that the interests associated with CA2 were revocable licenses and not easements, the trial court found that it was, quote, undisputed, end quote, that the interests associated with CA2 or limited common elements or LCEs were part of a separate and distinct freehold estate than CA2. The trial court found that this separate and distinct freehold estate of which the LCEs were a part was owned by the unit owners within the Coalina Beach Villas as tenants in common. Before KOD exercised its option and bought CA2 in December of 2010, CA2 was owned by Centex. The option agreements that gave KOD the option to purchase CA2 did not describe the and the amended declaration, however, did. And as a result, the trial court looked to those. Can I maybe, can I direct you to a question that kind of perked my interest or piqued my interest, I guess? Yes, sir. So I read carefully the district court judge's findings, the fact, the conclusions of law. He did it twice. Yes, he did. I must admit, they were quite intricate and quite detailed. I agree. But let me ask you this. He took a path down common law property principles and tried to overlay them on this condominium regime. I think that's right. Why don't we, under Hawaii law, why don't we just look to the declaration of condominium property regime, the declaration that's filed, to answer the questions that are raised here? I think he did. I think what the judge did was to look at that, to determine what was the nature of the interest involved here, whether it was a license or an easement. And I think what he said was, I don't really care what the parties called it because the parties in the declaration or the declaration calls these exclusive easements. And we think that the inquiry should just end there. But what the judge said was, well, I don't care about the way that it's been characterized in the declaration because, as I tried to get through the judge's opinion, because of the servient estate, which are the limited common elements, have the power to, quote, unquote, recharacterize those, that's where I think he comes out and says that there are licenses. I guess what I was getting at is, why don't we just look, I mean, if you look at, I guess it's paragraph 13, amendment of declaration? Yes. Why doesn't that just sort of guide what we might, the way we might look at this? Your Honor, I think if you take a look at that and it specifically says, and in that provision, paragraph, or article 13, specifically calls them easements appertaining to, and it talks about the fact that the owners of the servient estate have no power to do anything whatsoever with regard to the dominant estate's use of those interests. And so, and that is really consistent with what our view is. The power lies with the dominant estate. What, what, what the declaration says is that the developer, which is Sentex, has the right to recharacterize. That developer, that owner, that is the dominant estate. The owner of the servient estate is also defined in the declaration. They are called owners of apartments. And it, and to your Honor's point, to article 13, it specifically says that those owners of the apartment, those owners of the servient estate, that servient estate has absolutely no power to do anything when it comes to the dominant estate's use of those easements. And, and, and again, your Honor, that, that's also consistent with 514B39 of the Hawaii revised statute, which is cited in our brief, and that statute specifically says no amendment of the declaration affecting any of the limited common elements shall be effective without the consent of the owner of the unit to which the limited common elements are appurtenant. That once again shows that the power is within the dominant estate and that the owners of the servient estate over which these easements are, have, has no power whatsoever. But let me conclude, your Honor, with this point. Because not only do I think that what Judge Ezra did was to try to overlay, you know, fundamental principles of real property. But if we take a look at just the practical effect, if we're gonna let this just, just play out, and, and this is, and this I think is important. Because if we, if we let the decision stand, this is what it would permit. Let's say that Justice Thomas decides he wants to get away from Montana and buy a place here in, in Hawaii. And he goes to the resort and he purchases a tenth floor unit which has a lanai or a balcony on it. We know from the declaration that the balcony or lanai on the unit that Justice Thomas buys has, that, that unit, that balcony is an LCE. No different than the LCEs that we're talking about here. If the trial court's decision were to stand, this would mean that after Judge, Judge Thomas signs his contract, but before he closes, Sentex could strip away his right to use his balcony before he's able to buy it. Because that's no different than what happened to KOD here. KOD had the right, by virtue of this option, to purchase CA2, the dominant estate. While it held on to that right to buy CA2, just like Judge Thomas held his right to buy his tenth floor unit. Sentex came in and stripped away the LCEs or the lanai to CA2 before KOD could close. And that, Your Honor, I respectfully submit, is simply unfair and wrong. And for these reasons, Your Honors, KOD respectfully submits the trial court's decision regarding the nature of the interests should be reversed. And I know that Mr. Moore has a cross appeal with regard to the enforcement issue, which I'll address with my remaining time. Thank you. May it please the court, my name's Jonathan Moore. I'm representing Sentex Homes in the appeal, in the cross appeal. So what's wrong with his analogy? I'll tell you. The analogy, and if Justice, if Judge Thomas came out to Hawaii and bought an apartment under an agreement of sale at the Beach Villas, he, under the declaration, the moment he signed the agreement of sale, would have the rights of an owner. And under the declaration, the limited common elements may only be the moment he signed an agreement of sale. KOD, which put together and approved the terms of this amended and restated declaration at the same time that they were negotiating the right of first refusal, approved that definition of owner, which did not include someone who held a right of first refusal or an option. So had KOD wanted to absolutely make sure that they would have all of the limited common elements that were initially associated with the commercial apartments, they could have signed an agreement of sale. In which case, they would have had ownership rights from the very beginning. But they didn't do that. They hedged their bets and they used a right of first refusal, which they actually admit in their reply brief. They admitted that the right of first, that they had never argued that syntax could not re-characterize the limited common elements under the original ROFR. So that now their claim is only that after it became an option, which Judge Ezra ruled that the ROFR sort of transmitted itself into an option under paragraph 17 in the second amendment. Anyway, their argument is that after it became an option is when they somehow got the right to insist on the transfer of the limited common elements. So to answer your question, the hypothetical that was just presented is completely off base. And I think this- I was looking forward to the condo. Well, you can continue to look forward to the condo because you know when you sign it, you get what it says. But to get back to what's at issue in this case, I think it's very simple. And all that this court needs to do to uphold Judge Ezra's opinion is to find that the limited common elements were not appurtenant and did not run with the land. Now, when the counsel for Coyote was up here, all he talked about was whether they were easements or not. But that's not really the question. The question is, are these rights appurtenant and do they run with the land? And so it helps to think about basic definitions because an appurtenant easement cannot exist apart from the dominant tenement and can be transferred only on a transfer of the dominant property. And that very reason explains why an appurtenant easement is necessarily transferred through an instrument of transfer of the dominant property that does not mention the appurtenant easement. It's because the appurtenant easement is inseverable from the land and goes with it. So really you don't care whether it's an easement or a license, do you? No, I don't. I don't care whether it's an easement or a license because it could be an easement that does not run with the land. I mean, I understand your position. You're saying that all they have is an option agreement, and whether or not it's an easement or not, it doesn't make any difference. I understand your argument today. I think that there are a couple of parts to my argument. One is that it's not an appurtenant easement that runs with the land. And secondly, the court found, and it's in paragraphs 100 and 101 of Judge Ezra's October decision. The court found that whether or not it was an appurtenant easement, the parties had clearly agreed in the contracts to make easements that were of an impermanent character, so that we can't look at these contracts and say this contract was silent as to the transfer of easements. In fact, the parties agreed to a situation where Syntax had almost unlimited abilities to transfer the easements from one commercial apartment to another commercial apartment, or to re-characterize them, which in effect would transfer them to all of the apartments in the condominium. Well, to use the analogy, didn't I just lose my one eye when you re-characterized the ownership? Well, the re-characterization only applies to the limited common elements that were attached to the commercial apartments. And so we're talking about the swimming pools and the sidewalks in the property. So no, that does not- But your position is that your client had the unfettered right to re-characterize those elements, right? Not only the unfettered right to re-characterize the elements, but the unfettered right to move them to other apartments. Which my argument is that that is completely inconsistent with an appurtenant property right that runs with the land. You cannot, I mean, in KOD's opening brief, they made a hypothetical of a house that had a driveway easement over the house next door, okay? If you have a normal appurtenant easement that runs with the land, such as a driveway that crosses another person's property, and it serves a dominant estate, you cannot transfer that easement to another dominant estate without transferring your dominant estate. It simply cannot be done, an easement cannot be detached. But under Hawaii law, it can be. If you look at, I mean, under Hawaii law, limited common elements are detachable, which means they do not run with the land. So if you look at HRS 514B-40, which is the statute directly after the one Mr. Soapbook cited, it states that any limited common element may be transferred by one homeowner to another homeowner within the condominium with only the approval of those two homeowners involved, which means that a limited common element under Hawaii law is not some appurtenant easement that runs with the land. It's a poker chip that's held by the owner of the apartment, and they can be traded freely amongst the owners. It's a personal property right that's held by the owner. So if you have a personal property right in one hand, and you have a real property right, and you give somebody an option for the real property right that does not mention this personal right, there's no indication in that option that the limited common element must necessarily transfer over. And KOD has already admitted in its reply brief that when they originally entered into that right of first refusal, it did not include the limited common elements, and there was no restriction on syntax making that. What about your appeal? On our appeal, that's a wholly different issue. So we had a four-day bench trial back in August of 2010, and as Mr. Sopic went over, the court came out with a decision in September that ruled in our favor on the recharacterization issue. They filed a motion for reconsideration. The court came out with a second opinion in October. What was the result of the district court's judgment after the end of the trial? The result of the first one, and I don't have it in front of me, so I'm just going to summarize, was essentially that he found that the second amendment to the purchase and sale agreement by which Syntex bought the land, the underlying land from KOD, incorporated into it a draft version of the condominium declaration, and it also incorporated into it a draft version of the right of first refusal agreement, and the right of first refusal agreement was actually signed and executed on the same day that the purchase and sale agreement was signed and executed. And under the first decision by Judge Ezra, he found that this was all one integrated agreement, the right of first refusal, the declaration, and the purchase and sale agreement were all one document that could be interpreted within its four corners by looking at- He changed that, though? He changed that. So why doesn't he have the, I mean, leaving aside the jurisdictional issue, why doesn't the district court have the right to clarify its earlier ruling in the judgment? I would say that the court has the right to clarify the other ruling, but the court does not have the right to expand on its ruling. And in issuing the decision on the motion to enforce, the court had to look at events that happened months after the trial and had to take into consideration documents that were drafted and documents in light of the ruling and issue a decision as to whether or not those documents were allowed under the contract. And in the underlying ruling, the October decision, the court found that section 17 of the right of first refusal created an option because it allowed KOD to compel the sale of the commercial apartments. And under section 17, if KOD chose to compel the sale, it must accept the commercial apartments on the terms and conditions offered to the AOAO under section 1C of the original right of first refusal. So, Judge Ezra's decision in October never went into what those terms and conditions could be. Right, but then the parties come to him on an enforcement action on the judgment, and he said, well, this is what I meant. And it may be necessarily broader than the judgment, but he's interpreting what he did before. What's wrong with that? Well, what's wrong with that is that it deprived us of the right to have a full hearing on the issue. We never got to take any discovery. We never got to- So your argument isn't that he didn't have the power to do that, leaving aside the jurisdictional argument, but that you were deprived the right to have a hearing on it? That's correct. I mean, we- So isn't the solution on that just to say, look, we'll cure the jurisdictional defect and the notice and send it back and let him have a hearing? I think that- I don't think the result will change, but it would cure the argument. If we got to have a full hearing on the issue of how the covenants and restrictions that were placed into the sales notice in December 2010, how those should be interpreted under the section 1C of the right of first refusal, I think that we would be happy. What happened instead was that we had a very short notice. We got to brief it, 30 pages of brief, and have a hearing on short notice, and we never got to take a deposition. We never got- Do you contend that section 1C is ambiguous in some way? I mean, why would you need discovery? Why would you need an evidentiary hearing? I thought that the parties actually contended that all these provisions were clear and unambiguous, and Judge Ezra essentially found that they were clear and unambiguous. Judge Ezra did find that they were clear and unambiguous, and- Is that your position, too, or do you contend that part of that 1C is ambiguous in some respect? What section 1C says is that if KOD chooses to exercise its right of first refusal, it shall do so on the terms and conditions offered to the AOAO. It has never been stated what those terms and conditions must be or must not be. So you think it's ambiguous in that respect? I think it's ambiguous in that respect, but it was never, that's not something that was ever brought into the trial. It was never raised on the trial because we weren't talking about what the terms and conditions of the sale would be. We were talking about whether or not Centex had the right to recharacterize the commercial apartments. Well, that's true, but in dealing with the right of first refusal, I think the, perhaps I'm wrong, but it doesn't seem that complicated. Your opponent says, look, you can't give us the right of first refusal with what contains a poison pill, what they characterize as a poison pill. And you say, yeah, we can. I mean, that's not so complicated, is it? I'm not saying that it's complicated, but I mean, our reason for being here was the jurisdictional argument. And we do not believe that the court considered that issue at trial. And so we don't think that it was appropriate for the court to expand its ruling to cover something that should have been raised as a separate complaint. Right, but the care for that is that we simply send it back in the first case, since it limited remand and for hearings. So that doesn't, that may buy you some time, but it may not change the result. I mean, to me, the jurisdictional, maybe I'm wrong, but I think the jurisdictional defect, if there is one, and I think there may be, is curable. Why don't you think it's curable if we send it back from the first case? Just say you acted without jurisdiction when the notice of appeal was filed, but we give you a limited remand because we see that there are some issues that need to be worked out in the right of first refusal. Doesn't that cure the jurisdictional defect? I think it would cure the jurisdictional defect, and it would give us a chance to brief the issue. And if the court then issued a jurisdictionally sound decision on the full facts, we would then have a right of appeal from that, if that decision were of some substance to be heard. Judges, it looks like you spent quite a bit of time on this. As long as you, your position is that, if your position is that any of these terms are, or any of these clauses are unambiguous, then you might end up with the same result. I guess, to follow up on Judge Piazza's question, I don't understand what the factual dispute you have that would require discovery, so maybe you could enlighten me on that. I mean, it seems to me the terms are the terms, and the simple legal argument is, look, you can't impose this term. Let me explain a little on factual things that could be brought up in discovery. So if you look towards the bottom of section 1C, in the original right of first refusal, it states that any condition that cannot reasonably be met by- Capable of being satisfied. Capable of being satisfied, correct, by KOD shall not apply to KOD. So there is a discoverable question of what's capable of being satisfied by KOD and what's not. And that is something that was never brought up during the original hearing on this issue because we simply didn't have time to get into, and we didn't have the ability to do discovery or depositions on what is capable of being satisfied by KOD. Let me, why is all this, what was the practical result of all of this? What really is the fight about? Well, the fight on, and here I'm simply talking about our appeal, and this doesn't touch at all KOD's appeal. The fight there was that when Syntex issued the sales notice to the AOAO upon the triggering of section 17, it included certain covenants and restrictions that would be recorded against the commercial apartments. And that was a condition for the AOAO to accept the sale. The covenants and restrictions that were issued would have very basically limited the use of the commercial apartments. Right, you're taking away my lanai, basically, to put it, right? Well, no, it's not taking away your lanai. It's limiting you to using your lanai the way you've been using it for the last three years. So that is what these covenants and restrictions accomplished. And so that's really the underlying issue, and our appeal is- Does it give the association greater, obviously, it gives them greater rights. Is that what the end result is? Actually, is your question, does it give the association greater rights? Over these areas? No, it simply limits the areas to the uses that they had been used at the time, as of December 2010. So it doesn't give the association greater rights, and had the association- Well, in your view, I mean, your opponent takes the view that it had greater rights to begin with, and how you chose to exercise the rights is completely irrelevant. I mean, that's their argument, right? And my rejoinder to that is, if the AOAO had been the one to ultimately own these commercial apartments, because for whatever reason, KOD rejected the offer, and then the AOAO exercised its option to purchase, then the AOAO would also be limited to those uses. And so the AOAO is subject to the same constraints. So it's the same deal- But it held the AOAO, the owner's association had acquired the other rights anyway, so it doesn't make any difference, does it? Well, I think maybe a distinction that we need to make here is that this has nothing to do with the limited common elements. The limited common elements had already been re-characterized at the time this was done, so this isn't about the limited common elements. No, unless you go back to their appeal. I mean, if Judge Ezra's wrong about that- Well, if Judge Ezra's wrong about that, I don't think that that would alter our ability or our inability to have put these conditions and restrictions on the commercial apartments. I mean, the point there was, for example, you have a commercial apartment that right now is a lobby. If these restrictions go into place, you wouldn't be able to turn that commercial apartment into a fine dining restaurant. But that has nothing whatsoever to do with the swimming pools or the sidewalks. Okay. I see that I'm out of time. Thank you, counsel. I just have a couple of points on Mr. Moore's argument with regard to the motion to enforce. What the trial court found was that we obtained an option to purchase the commercial apartments for a dollar. As the holder of the option, we are entitled to take them as they existed on September 12, 2008, which is the date that we got them. Does it say that in the option, in the right of first refusal? Does it say? I'm sorry. Just what you said. No, I'm just saying that that is as a matter of law, and we cite this Snaden case- You lined up an option, right? All we got was an option. We did have an unconditional option. That's what the trial court found. And that's not a decision that's been appealed by Sentex. No, I understand. And so what the trial court says is you have an unconditional option to purchase this for a dollar. And then what happens after we get that ruling is that the folks at Sentex come in, and they try to load up with a poison pill the thing that we're allowed to buy. And so we go to the trial court and say, Your Honor, you said that our option is unconditional, and now somebody's trying to put conditions on our option. And so I don't think that there's any discovery that's necessary that we had there. What does this clause 1C mean, the last sentence? It's C little 3I. Any conditions not reasonably capable of being satisfied by KOD shall be deemed waived and inapplicable to the Senate. Your Honor. That seems to suggest that Sentex could impose conditions. I think that that, can you direct me to the, to the. Yes, this is the right of first refusal. On 1C? Yes. It goes to recitals, it has agreement, and this is right of first refusal. 1A, B, C, little 3I. And your question is, I don't view that as a condition on the option, Your Honor. I think that that's a condition that takes place. Shall, if KOD shall exercise its right to purchase, acquire, or lease one or more of the units, shall do so on the terms and conditions. Step forth in the notice of sale provided. And the only condition that, or the only term of this is that, is the price term. Which is that we're allowed. That's the way you would read that. It only, it's only limited to the price term. Absolutely. What do you think 3 or C, 3 means? Any conditions not reasonably capable of being satisfied by KOD shall be deemed waived and inapplicable to the sale? Right. I, I don't think that that has anything to do with the kind of use restrictions that Mr. Moore is talking about. I, I took his, his argument to mean otherwise. That that's, he, he thinks that's what, what's at issue here and he wants discovery. And that's what he needs discovery on? Yeah. Well, I, I, again, Your Honor, if that's the way that the court reads it, I suppose the way to cure it is to. No, I'm, I'm just asking you to respond, yeah. I, I, I don't, I don't view it as Mr. Moore views it. I don't, I think that the way I read the court's decision was that the option that we have is when we got these conditions that were trying to be imposed on these, which were, you know, draconian. I mean, it takes, it takes the thing that we are allowed to purchase and basically emasculates it. And says, you don't have any control over the thing you're about to buy. All of this stuff goes to the AOAO. And to address Mr. Moore's point in terms of it being equal, if it's going to be equal, then if you think about it, the way that it has to work then is that the conditions that were put on the homeowners association would have to say that we were the ones that get all the control in the event that they bought it. That's what makes it equal. And so, when we saw those conditions, we went into the court and we said, Your Honor, we, you found that this is unconditional. Again, I can't reiterate this enough. This is not something that Centex has appealed. The fact that this is an option and that this is an unconditional option. And that these conditions are trying to be imposed on the unit that we're going to buy. And the judge said, you know, without consideration of the conditions, he said, these are conditions, and I said that they had an option that was unconditional. And so, according to Rule 70, when we went in to enforce it, we weren't asking the judge, and I don't think the judge expanded or modified his decision. He just simply said, I'm clarifying, I'm interpreting what my order said. And so, I don't think that was out of the scope of what his findings of facts and conclusions of law said. I don't think he's stepped beyond that. I think he just interpreted and clarified it. And so, as a result, I don't think his decision on the motion to enforce was in error. So, when you fully execute the option, what's the result of all of that? Assuming it's an unconditional option, what's the result of all of that? The result is that we own the various commercial apartments, and we've done that. I mean, we did exercise the option, and we do own those commercial apartments now. And so, we have title to those commercial apartments. And that allows you to do what, to develop them or to use them? That allows us to do anything that we want, as long as it's consistent with a first-class luxury resort. We're not allowed to put in something that would, you know, cheapen the place. It has to be a very high-end establishment that's run out of those spaces. Can you give me an example? Sure. For example, the fitness center or the spa would be of a first-class quality. The beach bar would have to be run as a first-class establishment. With regard to the member's lounge area, if there was to be a restaurant or something put in there, it would have to be something that, because, you know, the unit that you bought, Judge, is at a place that's very, very nice. And so, you know, you don't want to put things in there that are going to be inconsistent with the whole... Judge, can I go? I was just picking on the judge because my brother lives in Montana, and I was talking to him about this. So, yes, there are conditions, there are, you know, certain standards that have to be met with regard to anything that you put in there. Now you have to go get the permission of the homeowners to do those things. Well, no, no, we don't because... No, no, I mean, if the homeowners, if your opponent's position prevailed, you would then have to get their permission to do any of those things. We'd have to get... We'd basically lose control, cede control of what we could do over to the homeowners association. Is this dispute really about what the homeowners or the owners fear you're going to do with the commercial units? I mean, I can't... You can't speak for them, but it strikes me, you know, apart from the law, there's a lot more going on. Yeah, I think they're... I don't know what they're fearful of. I think a lot of this dispute has to do with the fact that the Centex folks were being sued by, or threatened to be sued by some of the homeowners and were asked to take these measures right before we were going to exercise in order to satisfy this disgruntled group of homeowners. And so they did these things and as a result got some releases and things like that. I personally think that Centex is just doing this because, you know, they were obligated to do this under a settlement agreement and so they had... But I mean, as we cut through everything, it strikes me this is really a dispute between the homeowners and you about what you plan to do with the property. Is that fair or am I missing the boat? I think it has to do with control over those areas. And, you know, there's a whole backstory as to why... Right, I'm sure. Do you have any of the proceeds from those areas? Yeah, there's an issue there because one of the things that we're saying is, for example, in my example with regard to the beach bar or the spa, you know, we would say, you know, just like if one of your owners wanted to go get a massage down at, you know, the Ritz-Carlton, you could walk in and get one. You don't have to be a guest at the place. And as a result, the owner of the spa not only is able to draw proceeds from the folks that live there, but somebody that comes in off the street and wants to get a manicure or whatever, they could go and get that done. Or if somebody off the street wanted to go get a drink at a bar... The proceeds would go to the homeowners under their view and to you under your view, is that right? I'm sorry, Your Honor, I didn't hear the question. Proceeds would go to... Right now, they go to us. To us, to you. But under the San-Texas view, would they go to the homeowners? No, I think it would limit the proceeds that could come in. My customers could only be customers that were in the 247 units at the resort. All right. Okay. Thank you, Your Honor. Okay, thank you. Appreciate it. Thank you, thank you. Appreciate your argument, both sides. Case to start is submitted.
judges: Reinhardt, Thomas, Paez